AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
*July 08, 2020*
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No.  **4:20mj1207** |
| | ) | |
| | ) | |
| | ) | |
| HEZRON STUART | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___July 7, 2020___ in the county of ___Harris___ in the ___Southern___ District of ___Texas___, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 111 | Assault on a Federal Officer |

This criminal complaint is based on these facts:

(see attachment)

☒ Continued on the attached sheet.

*Complainant's signature*

Keith P. March, S.A. FBI
*Printed name and title*

Sworn to me and signed telephonically.

Date: July 08, 2020

*Judge's signature*

City and state:  Houston, Texas          U.S. Magistrate Judge, Dena Hanovice Palermo
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR COMPLAINT

I, Keith P. March, employed as a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, having been duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2113 (B). I am therefore, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests in connection with offenses enumerated in Title 18, United States Code, Section 111 (Assault on a Federal Officer). I am currently assigned to Federal Bureau of Investigation (FBI) Houston Division conducting investigations of violent crime violations and other federal violations.

2. I, Special Keith P. March, have been employed by the FBI as a Special Agent for the past three (3) years. I am assigned to the Violent Crime Task Force (VCTF), in the Houston Division, and my primary duties are the investigation of bank robberies and other violent crimes. I have received specialized training in investigations and forensic science through the Federal Bureau of Investigation and numerous other professional law enforcement agencies. I submit this Affidavit in support of the attached application for a criminal complaint.

3. I have conducted and participated in numerous investigations to include: crime scene investigations, collection of evidence, interviews and the execution of search and arrest warrants. This affidavit is made in support of a criminal complaint charging HEZRON BENJAMIN STUART with a violation of Title 18, United States Code, Section 111 (Assault on a Federal Officer).

1

4. The details and information stated herein are based on my training, experience, participation in this investigation, and discussions with other federal, state and local law enforcement officers. I have drafted this affidavit for the limited purpose of establishing probable cause for certain violations of law by HEZRON BENJAMIN STUART, therefore, I have not included all of the facts of this investigation in this affidavit.

## FACTS SUPPORTING PROBABLE CAUSE

5. On June 17, 2020, Affiant received notification from the Houston Federal Detention Center (hereinafter FDC), of an attempted escape. Affiant was advised that on June 15, 2020, FDC officials were notified that the inmate in cell number "121" was making a hole in the wall. FDC Officials were also advised that for several days inmates heard loud banging on the wall and sound of cement breaking from the cell. FDC officials inspected cell number 121 and discovered that a portion of the back wall was compromised.

6. Two (2) inmates were assigned to cell number 121: Hezron Benjamin Stuart (hereinafter Stuart), and David Williams (hereinafter Williams). Inmate Stuart was the sole occupant of cell 121 at the discovery of the hole in the wall, as Inmate Williams had been relocated and placed on suicide watch earlier that day.

7. An investigation of the incident discovered that a hole measuring approximately 10 inches by 13 inches was made by the repeated striking of the exterior cell wall with a metal object. A broken metal stool was discovered in the cell.

8. Interviews conducted with FDC personnel and prison inmates, resulted in the discovery that Stuart obtained a nail clipper from another inmate, and used the nail clipper to saw off the metal stool. Once the stool was removed, Stuart systematically chipped away at the cell wall over

2

a period of multiple nights.

9. Stuart conducted the destruction of the wall during shift changes that occurred nightly at approximately 3 a.m. Multiple inmates heard the banging of the walls during the night and wondered what was happening in cell 121. The inmates questioned each other but did not report the banging noise to prison officials.

10. In order to conceal the hole in the cell, Stuart removed a metal locker from the South side of the cell, and placed it on the North side. Stuart also fashioned two (2) homemade ropes fashioned from bedsheets, measuring a total of 36 inches. The linen was discovered by prison guards in a trash can inside of cell 121.

11. Prior to the discovery of the hole in the wall, Stuart's cellmate Williams made numerous attempts to transfer to another cell. As early as June 11, 2020 Williams made the request to prison officials. Stuart also confided in other inmates that he desired to transfer from cell 121. After his unsuccessful attempts at the transfer, Williams informed FDC officials on the morning of June 15, 2020, that he was suicidal.

12. After the discovery of the hole in the wall, FDC conducted mass interviews of every inmate on the unit. The consensus from the inmates who were willing to cooperate with the investigation was that Stuart, and not Williams, was responsible for the hole in the wall. This consensus was primarily based on the fact that Williams had been on the unit for several months and had not demonstrated any proclivity to escape. Stuart however had only been on the unit for approximately three weeks. Furthermore, it appeared to the other inmates that Williams feared Stuart.

13. On July 2, 2020 Agents conducted interviews of FDC personnel and witnesses. During the course of the investigation Stuart advised Agents that he desired to speak to Agents in order to

explain his side of the story. After being advised of his rights via Miranda, Stuart affixed his signature to the bottom of the form indicating that he desired to speak with Agents without an attorney.

14. During the interview, Stuart admitted that he sawed off the metal stool in cell-121 in order to assist Williams' efforts to escape. Stuart (who was 48 years old), said that he understood young people such as Williams (who was 20 years old), and had the ability to connect with young people. Stuart admitted to "riling Williams up," with instructions on how to escape from prison. Stuart said that although he sawed off the stool for Williams, he did not try to escape himself. Stuart further advised that if he wanted to escape, he would have done so.

15. Williams, who was also interviewed, advised that from the time that Stuart first entered cell 121, he talked of escaping. Williams stated that Stuart sawed off the metal stool, removed the metal locker from one side of the room to the other, used the metal stool to bang on the wall, and eventually made the hole in the wall. Due to his fear of Stuart, Williams did not inform prison officials of Williams' actions.

16. A review of the telephone system discovered that Stuart made four (4) phone to a female identified as, Shyann Stuart, between June 11, 2020 through June 15, 2020. During those call Stuart discussed, giving away everything in his locker and trying to send his money to her. Stuart further stated that he needed to get home, and the only thing on his mind was getting home to her.

17. Based on the internal FDC investigation, coupled with an external FBI investigation, it was determined that Stuart was solely reasonable for the attempted escape.

18. After Stuart's transfer from cell 121, he was relocated to a single person cell in the Special Housing Unit (SHU), located on the seventh (7th) floor. On July 2, approximately two (2) weeks

4

after his arrival on the SHU, Stuart was assigned a cellmate named Horace Harris (hereinafter Harris).

19. On July 2, 2020, at approximately 5:50 pm, FDC officials heard what sounded like banging on the walls. They immediately went to the cell that was occupied by Stuart and Harris, cell ZW-140, and observed that portions of the back wall of the cell was compromised. After noticing the guards, both Stuart and Harris began to put obstructions against the cell door window so that guards would be unable to look inside of the cell. Harris placed a piece of paper over the window, and Stuart placed wet toilet tissue to fill in the gaps. Harris then placed a mattress against the cell door, barricading both he and Stuart inside of the cell.

20. In order to see inside of the cell, FDC personnel stood on a chair and observed both Stuart and Harris using a metal stool to make a large hole in the wall. Stuart and Harris were using so much force to attack the wall, that they shattered the reinforced window inside of their cell. Stuart eventually came to the cell door and conversed with guards as Harris continued to bang on the wall. Stuart and Harris succeeded in creating a hole between 72 inches, and 84 inches long.

21. Agents again interviewed FDC personnel, as well as witnesses. Agents declined to interview Harris because Harris claimed that there were "little people" inside of his cell.

22. As mentioned earlier, Stuart requested to be interviewed by Agents. Stuart advised that similar to the last incident, he was placed in a cell with a much younger cellmate (HARRIS was 20 years old). Stuart again "ran his mouth" and informed Harris on various ways to escape from FDC. Stuart told Harris that he could not escape through the front door, but had to escape through the wall.

23. Stuart stated that unlike the June 15th incident, he did not break off the metal stool, but that

5

Harris broke off the stool himself by repeatedly kicking it. Stuart stated that Harris was exclusively responsible for the escape attempt, and his only role was to tell Harris how to successfully escape.

24. After the July 2nd, 2020 incident, Stuart was relocated to a single person cell on July 3, 2020. The cell was located on the Medical Observation area, and Stuart was assigned 24/7 monitoring.

25. On July 7, 2020, at approximately 9:45 pm, surveillance footage observed as Stuart was guarded by Officer Crystal Timiar (hereinafter Ofc. Timiar). The video appeared to show Stuart make a request of Ofc. Timiar. Ofc. Timiar stood up and pointed into Stuart's cell, appearing to give Stuart instructions to go to the rear of his cell. Stuart then appeared to comply as he walked and faced the outer wall inside of the cell. Ofc. Timiar then unlocked the outer door that lead to a bathroom.

26. The bathroom had two (2) doors; the outer door of the bathroom connected the bathroom to the open area where Ofc. Timiar sat, and the middle door connected the bathroom to the inner cell where Stuart was held.

27. Once inside of the bathroom, Ofc. Timiar appeared to unlock the middle door and then exit the bathroom through the outer door. Thereafter, Stuart was seen as he exited the inner cell and walked into the bathroom.

28. The surveillance cameras only capture the open area where Ofc. Timiar sat, and the inner cell where Stuart was held. There were no cameras that captured images inside of the bathroom.

29. After approximately one (1) minute later Stuart is observed as he exited the bathroom and returned to the inner room. Ofc. Timiar appeared to indicate for Stuart to stand against a wall as she unlocked the outer door and entered the bathroom.

6

30. Stuart again appeared to comply with Ofc. Timiar's instructions and walked towards the outer wall as he had done before, however as Ofc. Timiar entered the bathroom, Stewart rushed out of the inner cell and into the bathroom with Ofc. Timiar.

31. Surveillance captured Ofc. Timiar's foot trying to exit the bathroom into the outer area, however it appeared that Ofc. Timiar was forcefully pulled back into the bathroom. Stuart and Ofc. Timiar were in the bathroom, and out of camera view, for approximately four (4) minutes before Officer Robert Adams (hereinafter Ofc. Adams), entered the Medical Observation area.

32. Ofc. Adams then looked into the cell, appeared to radio for help, and quickly exited the area. Shortly thereafter, Ofc. Adams returned with Lieutenant Jeffery Collier (hereinafter Lt. Collier), and Officer Marcus Davis-Deberry (hereinafter Ofc. Deberry). The three men were observed as they entered into the bathroom and recovered the lifeless body of Ofc. Timiar.

33. Stuart, who by then had returned to the inner cell appeared to be given instruction by Lt. Collier. Thereafter Lt. Collier locked the door connecting the inner room and the bathroom, and lastly locked the door connecting the bathroom and the outer area.

34. The Officers are observed rendering aid to Ofc. Timiar who became animated after a short period of time.

35. FBI Agents conducted interviews of the responding Officers. Ofc. Adams advised that while on his way to exit the floor he heard muffled screams coming from the Medical Observation area. Upon investigating the noise he observed Ofc. Timiar laying incapacitated on the floor of the bathroom, with Inmate Stuart sitting next to her with a sharp object raised in his hand. Ofc. Adams shouted to get Stuart's attention, issued a distress call over his radio, and exited to get help.

36. Ofc. Deberry advised that he heard a distress call over the radio and responded to the

7

Medical Observation area, where he observed Ofc. Timiar laying incapacitated on the bathroom floor. Ofc. Deberry assisted in extracting Ofc. Timiar, pulling her out of the bathroom on a blue-colored smock.

37. Surveillance video depicted Stuart wearing a blue colored smock when he entered into the bathroom with Ofc. Timiar, however Stuart was naked when he exited the bathroom and returned to the inner cell.

38. Lt. Collier heard a radio distress call and immediately responded to the Medical Observation area. Upon arrival Lt. Collier observed Ofc. Timiar laying incapacitated on the bathroom floor. Lt. Collier instructed the other responding Officers to attend to Ofc. Timiar while he addressed Inmate Stuart who was sitting naked inside of the inner cell.

39. Lt. Collier observed a sharp metal object in Stuart's hand. He instructed Stuart to drop the object, but Stuart refused. Lt. Collier again told Stuart to drop the object and slide it under the door of connecting the inner cell, and bathroom. Stuart complied with Lt. Collier's instructions and slid a purple or pink-colored scissor into the bathroom.

40. Thereafter Lt. Collier rendered aid to Ofc. Timiar. By this time Ofc. Timiar was more alert and told Lt. Collier that Stuart punched, choked, wrapped the radio wires around her neck, and slammed her head against the floor. Consequently, Ofc. Timiar said she lost consciousness and believed that she died.

41. After medical units extracted Ofc. Timiar off the unit, Lt. Collier and Officer Johnel Francis (hereinafter Ofc. Francis), shackled Stuart. As he was being shackled, Stuart stated, "In the year 2020, you're going to remember Stuart; I'm going to kill somebody."

## CONCLUSION

For the reasons set forth above, I respectfully submit that there exists probable cause to charge HEZON BENJAMIN STEWART with a violation of Title 18, United States Code, Section 111 (Assault on a Federal Officer). I declare that the foregoing is true and correct to the best of my knowledge.

*Keith P. March*
Special Agent Keith P. March
Federal Bureau of Investigation

Sworn and subscribed by telephone the 8TH day of July 2020, in Houston, Texas.

*Dena Palermo*
Judge Dena Palermo
United States Magistrate Judge